IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 02-cv-01910-RPM-BNB

GLOBAL COMMUNICATIONS CONSULTING GROUP, L.L.C.,

Plaintiff,

v.

MINTECH STAFFING, L.L.C.,

Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the request by Mintech Staffing, LLC ("Mintech"), for a default judgment in connection with a writ of garnishment served on Gregory Casady as a creditor of Global Communications Consulting Group, LLC ("Global Communications"). I respectfully RECOMMEND that the request be DENIED.

Mintech obtained a judgment against Global Communications in the principal amount of $115,695, plus prejudgment interest of $15,086, on February 19, 2004. Judgment [Docket No. 63: Feb. 19, 2004]. On August 23, 2004, Mintech served a Writ of Garnishment--Judgment Debtor Other Than Natural Person on Gregory Casady inquiring:

> On the date and time this Writ was served upon you [August 23, 2004, at 4:19 p.m.], did you possess or control any personal property of the Judgment Debtor [Global Communications] or did you owe any rents, payments, obligations, debts or money's to the Judgment Debtor?"

Motion for Entry of Default Against Garnishee Gregory Casady (the "Motion for Default"), [Docket 69: Sept. 15, 2004], at Exh.A (the "Writ of Garnishment"). Mr. Casady failed to

respond to the Writ of Garnishment and, on September 24, 2004, the Clerk of the Court entered a

default against Mr. Casady pursuant to Fed. R. Civ. P. 55(a). [Entry of Default: Sept. 24, 2004].

Rule 103, Section 7(b), Colo. R. Civ. P., provides the following procedure to be followed

under the circumstances presented here:

> (1)   After a default is entered, the judgment creditor . . . may
> proceed before the court to prove the liability of the garnishee to
> the judgment debtor. . . .
>
> (3)   Upon hearing, if the court finds the garnishee liable to the
> judgment debtor . . . or in the possession or control of personal
> property of the judgment debtor . . . at the time of service of the
> writ:
>
> (A)   The court shall enter judgment in favor of the judgment
> debtor . . . against the garnishee for the use and benefit of the
> judgment creditor . . . if the garnishee was liable to the judgment
> debtor. . . .

Where, as here, the garnishee has failed to answer the writ of garnishment, a hearing

must be held to determine the existence, validity, and amount of the indebtedness of the

garnishee.  Maddalone v. C.D.C., Inc., 765 P.2d 1047, 1049 (Colo. App. 1988).  The judgment

creditor/garnishor must introduce extrinsic evidence of the liability, 13 Colo. Prac., Civil

Procedure Forms & Commentary §103.71, and has the burden of proving by a preponderance of

the evidence the garnishee's indebtedness to the judgment debtor.  Bohrer v. Church Mutual Ins.

Co., 965 P.2d 1258, 1266 n.6 (Colo. 1998); Maddalone, 765 P.2d at 1049.  "Thus, the garnishee

[Gregory Casady] is treated in the same manner as if he had been sued directly on the debt by the

judgment debtor [Global Communications]."  765 P.2d at 1049.

I held a hearing and took evidence on the issue of the liability of Mr. Casady to Global

Communications.  Based on the evidence before me, I conclude that Mintech has failed to meet

its burden of establishing the existence, validity, and amount of any debt owed by Mr. Casady to Global Communications at the time the writ of garnishment was served on him.

Mintech relies on two unsigned tax returns and the deposition testimony of Melissa Casady in support of its claim that Mr. Casady was indebted to Global Communications on August 23, 2004.  Melissa Casady is Gregory Casady's wife.  Transcript of Proceedings on February 2, 2005 [Docket No. 91-92: Feb. 14, 2005] (hereafter "Trans."), at p.20 line19 through p.21 line 4.  She also was an employee of Global Communications, id. at p.21 lines5-8, and appeared as the corporate designee at Global Communications' Rule 30(b)(6) deposition. Exhibits to Defendant's Hearing Brief [Docket No. 75: Nov. 24, 2004], at Exh.D (hereafter "M. Casady Depo.").

Global Communications' tax year coincided with the calendar year.  Trans., p.71 lines 8-10.  Its unsigned federal tax returns for 2002 show that at the beginning of 2002 there were no loans by the company to shareholders.  Exh.M at p.MC000104, line 7.  At the end of the 2002 tax year, the return indicates a loan from the company to shareholders of $430,000.  Id.

In 2003, Global Communications filed a short return for the period January 1, 2003, through August 31, 2003.  Exh.F at p.3.  Global Communications' unsigned 2003 federal return shows that at the beginning of 2003 the company had loans to shareholders of $430,000. Id. at p.6, line7.  By August 31, 2003, the amount of the loans had been reduced to $319,000.  Id.

At her deposition as the Rule 30(b)(6) designee for Global Communications, Mrs. Casady testified as follows:

Q.      Now, has Global Communications ever made a loan?

A.      Yes

Q.      To whom?

A.      A loan was made to one of the owners.

Q.      And what was the amount of that loan?

A.      I don't know the exact amount.

Q.      Has that been repaid?

A.      Not in full.

Q.      Who's the owner that owes the money?

A.      Greg Casady.

Q.      How much is it?

A.      I don't know.  I know it has been paid down, but I know
that it's not paid.

Q.      Any other loans that the company made?

A.      That's the only one I'm aware of.

Q.      Was the loan documented by a promissory note?

A.      Yes.

M. Casady Depo., p.43 line 23 through p.44 line 16.

Contradictory evidence was presented at the hearing held pursuant to Rule 103, however.

That evidence calls into question whether the unsigned tax returns are the final returns filed with

the Internal Revenue Service, Trans., p.25 line 23 through p.26 line 6, and also casts doubt about

the accuracy of the unsigned returns.  Trans., p.71 lines 22-25.

Mrs. Casady testified at the Rule 103 hearing that Global Communications had three

4

owners and that Mr. Casady was not the only shareholder.  Trans., p.21 lines 9-11.   She also

testified that there were loans by Global Communications in addition to the loan to her husband:

> Q       Okay.  And you're only aware of one loan to the
> shareholder, and that was the loan to your husband, Mr. Casady,
> correct?
>                              *    *    *
> A       There were additional loans.
>                              *    *    *
> Q       . . . During your deposition you stated there was one owner,
> your husband, to whom Global Communications made a loan; isn't
> that correct?
>
> A       Yes.
>
> Q       And in your testimony here, you never stated in direct
> response to these questions that were made to other
> shareholders, correct?
>
> A       I--I had forgotten.
>                              *    *    *
> Q       Do you know who owned--who owed $319,000, which of
> the shareholders owed $319,000 to the company as of August of
> 2003?
>
> A       There were three shareholders and not one of them owed
> the entire amount.  I--I--as I said, I didn't handle the financial end
> of this business at the time that this tax return was prepared, so I
> can't even answer that.  I don't know.

Trans., p.28 line14 through p.29 line 14; p.37 lines 4-11.

Although Mrs. Casady testified that the loan from Global Communications to her

husband was evidenced by a promissory note, the note is not in evidence.  The chief financial

officer of Global Communications, John Ball, who prepared the tax returns and is the person

most likely to have information about the loan to shareholders reported on the unsigned tax

returns was neither deposed nor called as a witness at the Rule 103 hearing.  Trans., p.62 lines

16-22; p.79 lines 5-20; p.81 line 24 through p.83 line 10.

The evidence establishes that there was a debt of $319,000 owed to Global Communications by one or more of its shareholders on August 31, 2003.  There is conflicting evidence, however, about which of the company's three shareholders owed the debt and conflicting evidence about whether any part of that debt continued to be owed to the company in August of 2004.  Based on the evidence before me, Mintech has failed to sustain its burden of proof by a preponderance of the evidence that Gregory Casady was indebted to Global Communications on August 23, 2004, and has failed to establish the amount of any such indebtedness.

I respectfully RECOMMEND that Mintech's request for a default judgment against Gregory Casady on the writ of garnishment is DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 29, 2005.

BY THE COURT:

/s/ Boyd N. Boland_____
United States Magistrate Judge